IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

JOSE V. FELICIANO FIGUEROA

Debtor

CASE NO. 09-07725 (MCF)

CHAPTER 13

JOSE V. FELICIANO FIGUEROA

Plaintiff,

v.

BANCO POPULAR DE PUERTO RICO;
A INSURANCE; B INSURANCE

Defendants

ADVERSARY CASE NO. 19-00032

## OPINION AND ORDER

The Plaintiff, Jose V. Feliciano Figueroa ("Debtor"), alleges that the Defendant, Banco Popular de Puerto Rico ("BPPR"), violated the automatic stay and the discharge injunction. The dispute centers around BPPR's application of post-discharge payments of a mortgage loan to periods that were within the bankruptcy proceeding, which resulted in a foreclosure proceeding against the Debtor after completing his bankruptcy.

I.      UNDISPUTED FACTS AND PROCEDURAL HISTORY

Pre-bankruptcy events

On April 29, 2009, Doral Bank ("Doral") filed a complaint in the Court of First Instance, Rio Grande Part against the Debtor for collection of monies and

-1-

foreclosure (Civil Case No. FCCI2009-0237). Doral was the holder of the mortgage note that was secured by a lien on the Debtor's residence.

Events during the bankruptcy

The Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on September 15, 2009 and included Doral as a creditor. Bankruptcy Case No. 09-07725 (MCF). On October 21, 2009, Doral filed proof of claim 3-1 in the amount of $107,629.45, claimed as secured. The Debtor's pre-petition arrears to Doral amounted to $20,307.71. Five days later, Doral through its counsel filed a notice of appearance and request for notice in the bankruptcy case. Docket No. 23, Case No. 09-07725-MCF. The foreclosure proceeding was stayed on December 10, 2009.

On July 16, 2010, the bankruptcy court entered an order confirming the chapter 13 plan, which provided for a cure of the default by payment of the arrears through the chapter 13 trustee and maintenance of current post-petition payments on the mortgage by the Debtor during the pendency of the plan. Subsequently, the Debtor fell behind on his post-petition mortgage payments to Doral. On September 24, 2012, Doral filed a motion for relief from stay. Docket No. 75, Case No. 09-07725-MCF. Doral amended its claim on November 8, 2012 (POC 3-2) and five days later withdrew the motion for relief from stay. Docket No. 86, Case No. 09-07725-MCF. On December 13, 2012, Doral amended its claim again, to include $3,149.24 in post-petition arrears (POC 3-3). A second motion for relief from stay was filed by Doral on August 15, 2013. Docket No. 96, Case No. 09-07725-MCF. The Debtor amended his plan on October 7, 2013 and provided for payment of the post-petition mortgage arrears owed in the amount of $3,149.24 for the months of May, August, September and October 2012 and post-petition mortgage arrears owed in the amount of $2,475.00 for the months of July, August, and September 2013. Docket No. 106, Case No. 09-07725-MCF. On October 18, 2013, Doral amended its proof of claim and claimed $75,587 as principal owed and $2,472.18 in post-petition

arrears (POC 3-4). The motion for relief from stay was withdrawn by Doral two months later. Docket No. 120, Case No. 09-07725-MCF.

On January 23, 2015, the Trustee filed a Notice of Final Cure Mortgage Payment, pursuant to Fed. R. Bankr. P. 3002.1. Docket No. 130, Case No. 09-07725-MCF. The notice was not answered by Doral as required by sub-section (g) of the rule. On February 18, 2015, the Trustee filed a "Chapter 13 Standing Trustee's Final Report and Account." Docket No. 132, Case No. 09-07725-MCF. The report indicated that the Trustee paid Doral $5,621.42 and $20,307.71. Id. The following day, the court entered the order of discharge. Docket No. 134, Case No. 09-07725-MCF. Doral was notified of the order of discharge. Docket No. 135, Case No. 09-7725-MCF.

Post-discharge events

Nine days later, on February 27, 2015, Doral was closed, and the FDIC was named as its receiver. On that same date, BPPR acquired the mortgage note. On this same month, the Debtor's employer ceased operations and laid off its employees. As a result of the Debtor's unemployment, he defaulted payment for the months of February 2015 and March 2015. The Debtor attempted to pay February 2015 and March 2015 and was informed by an employee of BPPR that he had five months in mortgage arrears, stemming from November 2014 up to March 2015 and that payments would be applied to the previously owed account statements. On May 26, 2015, BPPR handed to the Debtor a document titled "Post-Petition Payment Reinstatement Figures." This document indicated that the Debtor was in arrears for the months of August 2011, November 2011, February 2012, August 2014, March 2015, April 2015, and May 2015. The Debtor began receiving notices of delinquency from BPPR that warned him that his home might be foreclosed if he did not become current on his monthly payments. This prompted the Debtor to engage in conversations with BPPR to settle what he deemed to be an accounting error.

-3-

On September 21, 2015, BPPR appeared in the foreclosure case at the local court and requested the reopening of proceedings and to substitute Doral as plaintiff in the case. On October 7, 2015, the local court granted the request to reopen the proceedings and allowed BPPR to substitute Doral in the case. On June 29, 2016, BPPR requested the local court to enter default as to the Debtor. The Debtor filed a motion to dismiss on September 1, 2016, alleging that the allegations in the complaint were moot because he had paid all the mortgage arrears claimed in the complaint. On November 30, 2016, the local court denied the motion to dismiss. After several procedural events at the local court, judgment was entered against the Debtor on March 2, 2017. Notwithstanding, the local court stayed the judgment on April 4, 2017, after learning that the Debtor had applied for loss mitigation. The Debtor was unable to sign the final loss mitigation agreement. This adversary proceeding ensued. Both parties filed cross motions for summary judgment and oppositions. Docket Nos. 60, 66, 90 & 91.

## II. DISPUTED ISSUE

Whether BPPR violated the automatic stay and the discharge injunction by applying post-discharge mortgage payments to months during the bankruptcy.

## III. PARTIES CONTENTIONS

The Debtor argues that he paid his pre-petition and post-petition arrears through the life of the bankruptcy case. After simultaneously obtaining his discharge and losing his employment, he defaulted on his post-discharge payments of February and March 2015. When he tried to pay these arrears, BPPR informed him that they would credit payments from November 2014 onwards, because he was in arrears since that date. The Debtor contends that this accounting error led BPPR to continue the foreclosure proceeding that was stayed due to the bankruptcy proceeding and

eventually obtained a foreclosure judgment. According to the Debtor, BPPR's application of payments to alleged arrears from when he was in bankruptcy violate the automatic stay and that BPPR's behavior violated the discharge order.

BPPR denies that the Debtor made all direct post-petition mortgage payments while in bankruptcy. It argues that according to Doral's books and records, the Debtor defaulted with several post-petition mortgage payments as required by the plan. BPPR accuses the Debtor of laches because he unreasonably allowed BPPR to proceed with foreclosure litigation and sought protection from the bankruptcy court after BPPR had obtained its foreclosure judgment. It also states that the claims for violation of the automatic stay must be dismissed because the facts pled in the complaint relate to facts that occurred after the discharge order was entered. With regards to the post-discharge counts, BPPR claims that the Debtor's mortgage debt is not dischargeable and that it can proceed to foreclose in rem for any deficiency. BPPR does not address the failure of its predecessor, Doral, to reply to the Trustee's Notice of Final Cure Mortgage Payment, pursuant to Fed. R. Bankr. P. 3002.1 as required by section (g) of the rule.

## IV. LEGAL STANDARD

Under Fed. R. Civ. P. 56, made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). Summary judgment is appropriate for piercing the pleadings and assessing the proof to determine whether a trial is required. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). It is proper to enter summary judgment when the movant shows that there are no genuine disputes of

material fact and consequently the movant is entitled to judgment as a matter of law. Id. at 322; Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir. 2002). When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross motions and as the nonmoving party in response to the other party's motion. Wells Real Estate Inv. Trust II, Inc., 615 F.3d 45, 51 (1st Cir. 2010). If there are no disputed material facts, only one party is entitled to judgment as a matter of law. Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food Corp.), 553 B.R. 197, 205 (Bankr. D.P.R. 2016). This matter is appropriate for summary judgment disposition as there are no material facts in dispute and it is a matter of law. In re Colarusso, 382 F.3d 51 (1st Cir. 2004) (citing Celotex, 477 U.S. at 322-323); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

A creditor violates the automatic stay by engaging in intentional collection efforts of pre-petition debts. A debtor alleging a violation of the automatic stay must demonstrate, by a preponderance of the evidence, (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed, and (3) that the debtor suffered damage as a result of the violation. Rivera v. Oriental Bank, 558 B.R. 36, 41 (Bankr. D.P.R. 2016) (citing Slabicki v. Gleason, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012).

When the court grants a debtor a discharge, the automatic stay terminates and is replaced by the discharge injunction. Jakubaitis v. JPMorgan Chase Bank, N.A. (In re Jakubaitis), 2019 Bankr. LEXIS 716 (9th Cir. B.A.P. Mar. 7, 2019) (citing 11 U.S.C. 362(c)(2)(C)). To prove a discharge injunction violation, a debtor must establish that the creditor "(1) has notice of the debtor's discharge; (2) intends the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." Bates v. CitiMortgage, Inc., 844 F.3d 300, 304 (1st Cir. 2016)(citing Best v. Nationstar Mortgage LLC, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015)).

"[A] debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor." In re Lumb, 401 B.R. 1, 7 (1st Cir. B.A.P. 2009)(citing Curtis v. Salem Five Mortgage Co., LLC (In re Curtis), 359 B.R. 356 (1st Cir. B.A.P 2007)).

The doctrine of laches penalizes a litigant for negligent or willful failure to assert his rights. Government of Puerto Rico v. Carpenter Co., 442 F. Supp. 3d 464, 474 (D.P.R. 2020) (citing Valmor Prods. Co. v. Standard Prods. Corp., 464 F.2d 200, 204 (1st Cir. 1972)). The standard for proving laches requires proving "(1) lack of diligence by the party against whom the defense is asserted; (2) prejudice to the party asserting the defense." Id. (citing Museum of Fine Arts, Bos. v. Seger-Thomschitz, 623 F.3d 1, 10 n.9 (1st Cir. 2010)). The court's inquiry must look to whether the plaintiff's delay in suing was unreasonable and whether that delay caused prejudice to defendant. Doyle v. Huntress, Inc., 513 F.3d 331, 335 (1st Cir. 2008). Laches is an equitable doctrine, which is within the sound discretion of the court. Id.

## V. LEGAL ANALYSIS

Bankruptcy Rule 3002.1

In the instant case, the Plaintiff was the debtor of a completed chapter 13 case who, instead of rejoicing over a successful financial reorganization, was faced subsequently with a possible foreclosure. The Debtor believed that he finished his bankruptcy with his mortgage payments current and there was no indication otherwise from the secured creditor. Pursuant to Fed. R. Bankr. P. 3002.1, the chapter 13 trustee must file and serve on the mortgage creditor a notice "stating that the debtor has paid in full the amount required to cure any default on the claim." Fed. R. Bankr. P. 3002.1(f). The rule also requires that the creditor respond within 21 days to state whether it agrees or disagrees that the debtor has paid in full the

amount required to cure the default on the claim. Fed. R. Bankr. P. 3002.1(g). If there is an amount to be cured, the creditor must itemize the required cure or post-petition amounts that it contends that are unpaid as of the date of the statement. Id. Failure by the creditor to respond to the notice empowers the court to take either or both of two actions: (1) preclude the creditor from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure. Fed. R. Bankr. P. 3002.1(i).

Doral, BPPR's predecessor, did not respond to the trustee's Notice of Final Cure Payment at Docket No. 130, Case No. 09-07725-MCF. Doral failed to notify of any alleged post-petition arrears within 21 days as they were required pursuant to Fed. R. Bankr. P. 3002.1. BPPR acquired Doral, through the FDIC, two weeks after the 21-day deadline had expired to object to the Notice of Final Cure. Therefore, according to this rule, BPPR is precluded from presenting the omitted information regarding the arrears at this juncture of the proceedings.[1]

This contested issue is precisely what Fed. R. Bankr. P. 3002.1 seeks to avoid. This rule was implemented to prevent unexpected deficiencies in residential mortgage payments when a chapter 13 case is completed and closed. In re Vega, 2019 Bankr. LEXIS 545 (Bankr. D. P.R. Feb. 21, 2019). Post-discharge claims that such deficiencies existed had been a persistent problem in chapter 13 cases prior to promulgation of the rule. In re Rivera, 599 B.R. 335, 343 (Bankr. D. Ariz. 2019). The rule is only applicable in chapter 13 cases in which a debtor has a mortgage

---

[1] "The creditor upon whom the Final Cure Notice is served must file a statement and serve it upon the chapter 13 trustee, the debtor and debtor's counsel within 21 days after service of the notice. The statement must accurately state (1) whether the creditor agrees that the debtor has paid all arrearages in full to cure any default in the mortgage and (2) whether the debtor is current on all payments required by section 1322(b)(5)." 9 Collier on Bankruptcy P 3002.1.04 (16th 2021). "If the debtor is not current, the creditor must itemize all amounts necessary to cure any arrearages that the creditor contends remain unpaid." Id. "If the debtor or the chapter 13 trustee disputes the response filed by the creditor, the debtor or trustee may file a motion *within 21 days after the statement of the creditor is filed pursuant to Rule 3002.1(g).*" Id. (emphasis added).

encumbering his principal residence. Id. at 342. No other claims can be dealt with under the rule.[2] Fed. R. Bankr. P. 3002.1(a).

If the creditor fails to timely file and serve the notice of fees, expenses, and charges in the proper form or with the proper notice, the court may, upon motion brought by the debtor, trustee, or other party in interest and after notice and hearing, take action against the creditor. Fed. R. Bankr. P. 3002.1(i). The court may preclude the creditor from presenting any omitted information as evidence in any contested matter or adversary proceeding in the case. Id.

The only defense a creditor has to this action is to prove that the failure to provide the information was substantially justified or harmless. 9 Collier on Bankruptcy ¶ 3002.1.05 (16th 2021) (citing In re Tollios, 491 B.R. 886 (Bankr. N.D. Ill. 2013)) (finding that a creditor violated Rule 3002.1, but that sanctions against the creditor under Rule 3002.1(i) were not warranted because the debtors suffered no harm from the violation, but also concluding that the debtors might be entitled to attorney fees). The court may alternatively award other appropriate relief, such as reasonable expenses and attorney's fees caused by the failure of the creditor to properly file the required information. Id.

The Advisory Committee Note to Fed. R. Bankr. P. 3002.1(i) details that a debtor may reopen a bankruptcy case to request sanctions against a mortgage creditor that seeks to collect amounts not informed under the rule:

> If, after the chapter 13 debtor has completed payments under the plan and the case has been closed, the holder of a claim secured by the debtor's principal residence seeks to recover

---

[2] "The rule [Fed. R. Bankr. P. 3002.1] requires notice of payment changes and other charges and provides a procedure to draw a bright line at the conclusion of a case as to any amounts that may remain due to a creditor relating to the cure payments or payments due on a mortgage during the pendency of the chapter 13 case." In re Carr, 468 B.R. 806, 808 (Bankr. E.D.Va. 2012). "The latter process starts with the chapter 13 trustee filing a Notice of Final Cure Payments." Id. "The creditor must respond to that notice by acknowledging that it is correct, or if it is not correct, stating with particularity the amounts that remain unpaid." Id. "If the debtor or the trustee contests the creditor's claim for unpaid amounts, the debtor or the trustee must file a motion to determine whether the debtor has cured the default and paid all required payments and fees." Id.

> amounts that should have been but were not disclosed under this rule, the debtor may move to have the case reopened to seek sanctions against the holder of the claim under subdivision (i).

9 Collier on Bankruptcy ¶ 3002.1.05 (16th 2021).

BPPR did not address the failure of Doral to reply to the Trustee's Notice of Final Cure Mortgage Payment or provide any proof that the failure to provide the information was substantially justified or harmless.

Doral and its successor, BPPR, could not wait until "game over" to let the Debtor know that he was about to emerge from bankruptcy with a huge problem on his hands and a possible foreclosure of his home.  This type of ambush is precisely what Fed. R. Bankr. P. 3002.1 seeks to avoid. By failing to notify the arrears during the bankruptcy on a timely basis pursuant to the rule, it could not collect any further charges pertaining to the time-period of the bankruptcy, even if the Debtor was in arrears, as BPPR alleges. In other words, the Debtor was deemed current because Doral failed to notify otherwise. Collection of "alleged arrears" by BPPR violates the discharge order since the Debtor was current on his mortgage and all his unsecured debts were discharged. Consequently, BPPR could not pursue any alleged arrears that may have incurred during the bankruptcy case as a result of Doral's failure to object to the Notice of Final Cure.

Laches

BPPR accuses the Debtor of laches because he unreasonably allowed BPPR to proceed with foreclosure litigation and sought protection from the bankruptcy court after BPPR had obtained its foreclosure judgment.

A party that invokes the equitable doctrine of laches must show "(1) lack of diligence by the party against whom the defense is asserted; (2) prejudice to the party

-10-

asserting the defense." Government of Puerto Rico v. Carpenter Co., 442 F. Supp. 3d 464, 474 (D.P.R. 2020) (citing Museum of Fine Arts, Bos. v. Seger-Thomschitz, 623 F.3d 1, 10 n.9 (1st Cir. 2010)).

The court does not find that this equitable doctrine is applicable to the facts of this case. The record before the court reflects that the Debtor continually informed BPPR that it emerged from bankruptcy current on his post-petition payments. The Debtor filed a motion to dismiss in the foreclosure action and presented the local court with docket entries from the bankruptcy case. The Debtor also pursued loss mitigation. Accordingly, we cannot find that the Debtor was not diligent in exercising his rights. These facts certainly preclude BPPR from raising an equitable doctrine to have the complaint against it dismissed.

Violation of the Automatic Stay

A debtor alleging violation of the automatic stay must comply with a three-prong test that requires showing by preponderance of the evidence (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed, and (3) that the debtor suffered damage as a result of the violation. Rivera v. Oriental Bank, 558 B.R. 36, 41 (Bankr. D.P.R. 2016) (citing Slabicki v. Gleason, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012).

The record of this case and the undisputed facts do not show that BPPR violated the automatic stay. BPPR reopened the pre-petition foreclosure action against the Debtor, after the automatic stay had been terminated by the entry of the discharge order, pursuant to 11 U.S.C. § 362(c)(2)(C). Any attempts to collect against the Debtor by BPPR was after the discharge order. Thus, the Debtor's request for violation of the automatic stay against BPPR is denied.

-11-

<u>Violation of the Discharge Injunction</u>

The test to prove a violation of the discharge injunction also requires a debtor to meet three prongs. A debtor must establish that the creditor "(1) has notice of the debtor's discharge; (2) intends the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." <u>Bates v. CitiMortgage, Inc.</u>, 844 F.3d 300, 304 (1st Cir. 2016)(citing <u>Best v. Nationstar Mortgage LLC</u>, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015)).

The court deems the first prong of discharge violation met regarding notice. Doral, BPPR's predecessor, participated actively during the bankruptcy and had notice of the Debtor's discharge. Regarding the second prong of intentional action, the court finds that BPPR intentionally applied the Debtor's post-discharge payments to alleged arrears during the bankruptcy period. The court finds that BPPR's post-discharge actions comply with the third prong of violation of the discharge because its actions improperly coerced and harassed the Debtor. The failure to either correctly apply payments or answer the Notice of Final Cure Payment resulted in burdening the Debtor with notices and legal proceedings. Because all the three prongs of the violation of discharge are met, the court grants the Debtor's request to find that BPPR violated the discharge order.

-12-

## VI.    CONCLUSION

The court grants the Debtor's motion for summary judgment as to the violation of the discharge injunction and denies the count for violation of the automatic stay (Docket No. 60).  BPPR's motion for summary judgment (Docket No. 66) is denied.

A pre-trial hearing is set for February 23, 2022, at 9:00 a.m. Parties must file a joint pre-trial report 14 days before the hearing. After the pre-trial conference, the court will schedule an evidentiary hearing for damages regarding the violation of the discharge injunction.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of December, 2021.

_____
MILDRED CABAN FLORES
United States Bankruptcy Judge

-13-